**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

ANNMARIE AVILA and YANKEE
GINDOFF, individually and on behalf of all
others similarly situated,

                            Plaintiffs,

            *vs*.

FRONTLINE ASSET STRATEGIES, LLC, a
Minnesota Limited Liability Company; LVNV
FUNDING, LLC, a Delaware Limited Liability
Company; RESURGENT CAPITAL
SERVICES, L.P., a Delaware Limited
Partnership; JH PORTFOLIO DEBT
EQUITES, LLC, a California Limited Liability
Company; and JOHN DOES,

                          Defendants.

---------------------------------------------------------------x

CASE NO.:

**<u>CLASS ACTION</u>**

**COMPLAINT FOR VIOLATIONS OF
THE FAIR DEBT COLLECTION
PRACTICES ACT**

**<u>DEMAND FOR JURY TRIAL</u>**

## I.  PRELIMINARY STATEMENT

1.     Plaintiffs, ANNMARIE AVILA ("AVILA") and YANKEE GINDOFF

("GINDOFF"), individually and on behalf of all others similarly situated, bring this action for the

illegal practices of Defendants, FRONTLINE ASSET STRATEGIES, LLC ("FRONTLINE"),

LVNV FUNDING, LLC ("LVNV"), RESURGENT CAPITAL SERVICES, L.P.

("RESURGENT"); JH PORTFOLIO DEBT EQUITES, LLC ("JH PORTFOLIO"), and JOHN

DOES (collectively, "Defendants") who, *inter alia*, used false, deceptive, and misleading

practices, and other illegal practices, in connection with their attempts to collect an alleged debt

from the Plaintiffs and other similarly situated consumers.

2.     Plaintiffs allege that Defendants' collection practices violate the Fair Debt

Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*.

3.     Such collection practices include, *inter alia*, sending consumers written communications in an attempt to collect debts, which falsely imply the consumers' alleged defaulted and charged-off credit debts are continuing to accrue daily interest, late charges, and other charges.

4.     The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The U.S. Congress, finding evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

5.     The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Second Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

6.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain

information concerning a consumer, 15 U.S.C. § 1692e(10).

7.      The FDCPA at 15 U.S.C. § 1692g, requires a debt collector provide written notice containing certain information. 15 U.S.C. § 1692g(a)(1)-(5). Among this required information is the amount of the debt, 15 U.S.C. § 1692g(a)(1).

8.      The Plaintiffs, on behalf of themselves and all others similarly situated, seek statutory damages, actual damages, punitive damages, declaratory relief, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA and all other common law or statutory regimes.

## II.  PARTIES

9.      AVILA is a natural person.

10.     At all times relevant to this lawsuit, AVILA is a citizen of, and resides in, the Village of Rockville Centre, Nassau County, New York.

11.     GINDOFF is a natural person.

12.     At all times relevant to this lawsuit, GINDOFF is a citizen of, and resides in, the Hamlet of Monsey, Rockland County, New York

13.     At all times relevant to this complaint, FRONTLINE is a limited liability company existing pursuant to the laws of the State of Minnesota.

14.     FRONTLINE maintains its principal business address at 2700 Snelling Avenue N., Suite 250, City of St. Paul, Ramsey County, Minnesota.

15.     RESURGENT is a limited partnership existing pursuant to the laws of the State of Delaware.

16.     RESURGENT maintains its principal place of business at 55 Beattie Place, Suite 300, MS425, City of Greenville, Greenville County, South Carolina.

17.     LVNV is a limited liability company existing pursuant to the laws of the State of

Delaware.

18.    LVNV maintains its principal place of business at 625 Pilot Road, Suite 3, City of Las Vegas, Clark County, Nevada.

19.    JH PORTFOLIO is a limited liability company existing pursuant to the laws of the State of California.

20.    LVNV maintains its principal place of business at 5757 Phantom Drive, Suite 225, City of Hazelwood, St. Louis County, Missouri.

21.    Defendants, JOHN DOES, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiffs. Plaintiffs will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

22.    Plaintiffs are informed and believe, and on that basis allege, that Defendants, JOHN DOES, are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw the violative policies and procedures used by the employees of Defendants that are the subject of this Complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by the other Defendants and, therefore, are personally liable for all the wrongdoing alleged in this Complaint.

### III.  JURISDICTION & VENUE

23.    Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 and 1337.

24.    Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to AVILA's claims occurred within this federal judicial district, and because the Defendants are each subject to personal jurisdiction in the State of New York at the time this action is commenced.

## IV.  FACTS CONCERNING AVILA

25.      AVILA allegedly incurred a financial obligation to for a personal credit card with Capital One, N.a. ("Avila Debt.")

26.      The Avila Debt arose out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

27.      At some point after AVILA's alleged default, the original creditor of the Avila Deb determined that the debt was uncollectable, and therefore decided to "charge-off" the debt.

28.      Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

29.      FRONTLINE, LVNV, and RESURGENT contend the Avila Debt was in default and the amount due had been charged-off, and accelerated in full, by the original creditor.

30.      AVILA is informed and believes, and on that basis alleges, that the original creditor sold the Avila Debt and, together with hundreds or thousands of its other charged-off open-ended consumer credit accounts, to an unknown purchaser(s) of defaulted consumer debts.

31.      The Avila Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

32.      AVILA is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

33.      On information and belief, sometime prior to December 13, 2017, the creditor of the Avila Debt either directly or through a series of intermediate transactions, assigned, placed,

transferred, or sold the debt to LVNV for collection.

34.     LVNV is a purchaser of performing and non-performing consumer debts, which are in default at the time the debts are acquired.

35.     LVNV pays an average of less than five cents on the dollar for the defaulted debts it purchases and then attempts to collect those purchased debts by filing lawsuits on them.

36.     LVNV collects, and attempts to collect, defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of itself and other debt buyers using the U.S. Mail, telephone, and Internet.

37.     In connection with its debt collection operations, LVNV routinely hires other debt collectors, such FRONTLINE, to send dunning letters to consumers in an effort to collect money on the defaulted consumer debts LVNV acquires.

38.     LVNV is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

39.     LVNV is not a "creditor" as defined by 15 U.S.C. § 1692a(4).

40.     Notwithstanding the substantial volume of collection activity in which it engages, LVNV claims that it has no employees. (Statement of Material Facts filed as Doc. No. 69 in *Randall v. Nelson & Kennard*, 2:09-cv-00387 (D. Ariz., filed Aug. 9, 2010)).

41.     All actions taken in the name of LVNV are in fact taken by RESURGENT, pursuant to a written agreement and power of attorney that LVNV has executed in favor of RESURGENT. (Statement of Material Facts filed as Doc. No. 69 in *Randall v. Nelson & Kennard*, 2:09-cv-00387 (D. Ariz., filed Aug. 9, 2010)).

42.     LVNV has stated on its website, www.lvnvfunding.com, that "LVNV Funding purchases portfolios of both domestic (U.S.) and international consumer debt from credit grantors including banks, finance companies, and other debt buyers. As the new owner of any debt purchased from the original creditor or from another debt buyer, LVNV Funding's name

may appear on a customer's credit bureau, or in a letter from a collection agency if the account is delinquent."

43.     LVNV has also stated on its website that, "[a]ll capital markets and business development activities are handled internally, while the management of purchased assets is outsourced to a third-party specializing in the management of these types of consumer assets, Resurgent Capital Services LP (Resurgent). Resurgent is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers, and has been hired by LVNV Funding to perform these services on its behalf. Resurgent, a licensed debt collector, may perform these activities directly, or in many cases, will outsource the recovery activities to other specialized, licensed collection agencies. If you are a customer, please direct your inquiries to the firm currently working your account."

44.     The above statements continue to describe the relationship between LVNV and RESURGENT.

45.     RESURGENT and LVNV are under common ownership and management; both are part of the Sherman Financial Group.

46.     RESURGENT directed the collection activity complained of herein even though it was undertaken in LVNV's name.

47.     RESURGENT collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

48.     RESURGENT is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

49.     Sometime prior to December 13, 2017, and within the one-year period immediately preceding the filing of the complaint in this action, LVNV either directly or through intermediate transactions assigned or placed the Avila Debt to FRONTLINE for collection.

50.     AVILA is informed and believes, and on that basis alleges, that at all times relevant to the collection of the Avila Debt, there existed a principal-agent relationship between FRONTLINE on the one-hand, and RESURGENT and LVNV on the other hand.

51.     AVILA is informed and believes, and on that basis alleges,  that at all times relevant to the collection of the Avila Debt, FRONTLINE was also the agent RESURGENT and LVNV acting within the course and scope of its employment at the time of the incidents complained of herein, and was at all times under the direct supervision, instruction, control, and approval of RESURGENT.

52.     AVILA is informed and believes, and on that basis alleges, that at all times relevant to the collection of the Avila Debt, RESURGENT directed and controlled the manner and means by which FRONTLINE attempted to collect debts from the AVILA and the putative class members.

53.     FRONTLINE collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. mail, telephone, and Internet.

54.     FRONTLINE is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

55.     On or about December 13, 2017, FRONTLINE mailed a collection letter to AVILA concerning the Avila Debt. ("Avila Letter"). A true and correct copy of the Avila Letter is attached hereto as ***Exhibit A***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted certain information to protect AVILA's privacy.

56.     The Avila Letter was mailed, or caused to be mailed, by persons employed by FRONTLINE as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

57.     The Avila Letter was mailed to AVILA in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

58.     The Avila Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

59.     Page One of the Avila Letter falsely represents that the Avila Debt will increase due to the continuing accrual of interest, late charges, and other charges that may vary from day to day and, therefore, the amount due on the day she pays pay may be greater.

60.     At the time the Avila Letter was mailed the Avila Debt was static and, therefore, was no longer accruing any interest, late charges, or other charges.

61.     Neither FRONTLINE, RESURGENT, nor LVNV may legally or contractually impose late charges on the Avila Debt.

62.     Neither FRONTLINE, RESURGENT, nor LVNV will ever impose late charges on the Avila Debt.

63.     Neither FRONTLINE, RESURGENT, nor LVNV will ever impose other charges on the Avila Debt.

64.     Neither FRONTLINE, RESURGENT, nor LVNV may legally or contractually impose interest on the Avila Debt.

65.     Neither FRONTLINE, RESURGENT, nor LVNV will ever impose interest on the Avila Debt.

66.     *Exhibit A* is materially false, deceptive, and misleading because it falsely suggests to least sophisticated consumers that the amount of their debts will increase due to an undisclosed amount of interest and charges that vary from day to day.

67.     The disclaimer on *Exhibit A* is materially false, deceptive, and misleading in that, *inter alia*, it states the consumer will owe an additional undisclosed sum of money after payment is tendered to FRONTLINE.

68.     The Avila Letter deprived AVILA of truthful, non-misleading, information in connection with FRONTLINE's attempt to collect a debt.

## V.  FACTS CONCERNING GINDOFF

69.     GINDOFF allegedly incurred a financial obligation to for a personal credit card with HSBC Bank Nevada, N.a. ("Gindoff Debt.")

70.     The Gindoff Debt arose out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

71.     At some point after GINDOFF's alleged default, the original creditor of the Gindoff Deb determined that the debt was uncollectable, and therefore decided to "charge-off" the debt.

72.     Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

73.     FRONTLINE and JH PORTFOLIO contend the Gindoff Debt was in default and the amount due had been charged-off, and accelerated in full, by the original creditor.

74.     GINDOFF is informed and believes, and on that basis alleges, that the original creditor sold the Gindoff Debt and, together with hundreds or thousands of its other charged-off open-ended consumer credit accounts, to an unknown purchaser(s) of defaulted consumer debts.

75.     The Gindoff Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

76.     GINDOFF is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

77.     On information and belief, sometime prior to November 8, 2017, the creditor of the Gindoff Debt either directly or through a series of intermediate transactions, assigned, placed, transferred, or sold the debt to JH PORTFOLIO for collection.

78.     JH PORTFOLIO is a purchaser of performing and non-performing consumer debts, which are in default at the time the debts are acquired.

79.     JH PORTFOLIO collects, and attempts to collect, defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of itself and other debt buyers using the U.S. Mail, telephone, and Internet.

80.     In connection with its debt collection operations, JH PORTFOLIO routinely hires other debt collectors, such FRONTLINE, to send dunning letters to consumers in an effort to collect money on the defaulted consumer debts JH PORTFOLIO acquires.

81.     JH PORTFOLIO is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

82.     JH PORTFOLIO is not a "creditor" as defined by 15 U.S.C. § 1692a(4).

83.     Sometime prior to November 8, 2017, and within the one-year period immediately preceding the filing of the complaint in this action, JH PORTFOLIO either directly or through intermediate transactions assigned or placed the Gindoff Debt to FRONTLINE for collection.

84.     GINDOFF is informed and believes, and on that basis alleges, that at all times relevant to the collection of the Gindoff Debt, there existed a principal-agent relationship between FRONTLINE on the one-hand, and JH PORTFOLIO on the other hand.

85.     GINDOFF is informed and believes, and on that basis alleges,  that at all times relevant to the collection of the Gindoff Debt, FRONTLINE was also the agent JH PORTFOLIO acting within the course and scope of its employment at the time of the incidents complained of

herein, and was at all times under the direct supervision, instruction, control, and approval of JH PORTFOLIO.

86.     GINDOFF is informed and believes, and on that basis alleges, that at all times relevant to the collection of the Gindoff Debt, JH PORTFOLIO directed and controlled the manner and means by which FRONTLINE attempted to collect debts from the GINDOFF and the putative class members.

87.     FRONTLINE collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. mail, telephone, and Internet.

88.     FRONTLINE is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

89.     On or about November 8, 2017, FRONTLINE mailed a collection letter to GINDOFF concerning the Gindoff Debt. ("Gindoff Letter"). A true and correct copy of the Gindoff Letter is attached hereto as ***Exhibit B***, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted certain information to protect GINDOFF's privacy.

90.      The Gindoff Letter was mailed, or caused to be mailed, by persons employed by FRONTLINE as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

91.     The Gindoff Letter was mailed to GINDOFF in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

92.     The Gindoff Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

93.     Page One of the Gindoff Letter falsely represents that the Gindoff Debt will increase due to the continuing accrual of interest, late charges, and other charges that may vary from day to day and, therefore, the amount due on the day she pays pay may be greater.

94.    At the time the Gindoff Letter was mailed the Gindoff Debt was static and, therefore, was no longer accruing any interest, late charges, or other charges.

95.    Neither FRONTLINE nor JH PORTFOLIO may legally or contractually impose late charges on the Gindoff Debt.

96.    Neither FRONTLINE nor JH PORTFOLIO will ever impose late charges on the Gindoff Debt.

97.    Neither FRONTLINE nor JH PORTFOLIO will ever impose other charges on the Gindoff Debt.

98.    Neither FRONTLINE nor JH PORTFOLIO may legally or contractually impose interest on the Gindoff Debt.

99.    Neither FRONTLINE nor JH PORTFOLIO will ever impose interest on the Gindoff Debt.

100.    ***Exhibit B*** is materially false, deceptive, and misleading because it falsely suggests to least sophisticated consumers that the amount of their debts will increase due to an undisclosed amount of interest and charges that vary from day to day.

101.    The disclaimer on ***Exhibit B*** is materially false, deceptive, and misleading in that, *inter alia*, it states the consumer will owe an additional undisclosed sum of money after payment is tendered to FRONTLINE.

102.    The Gindoff Letter deprived GINDOFF of truthful, non-misleading, information in connection with FRONTLINE's attempt to collect a debt.

## VI. POLICIES AND PRACTICES COMPLAINED OF

103.    It is Defendants' policy and practice to engage in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692g(a)(1), by sending consumers letters, such as *Exhibits A and B*, that falsely state the consumers' debts will continue to accrue interest, late charges, and other charges on a daily basis.

104.    On information and belief Defendants' collection letters, in the form attached as *Exhibits A and B*, were each mailed to at least 50 natural persons in the State of New York.

## VII. CLASS ALLEGATIONS

105.    Plaintiffs brings this claim on behalf of two classes pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

106.    The First Class consists of all persons to whom FRONTLINE mailed a written communication in the form of *Exhibit A* between November 7, 2017 through November 28, 2018, using an address in the State of New York, which sought to collect a defaulted credit card debt on behalf of LVNV where the balance had been charged-off by the original creditor and the letter stated "As of the date of this letter you owe $[amount]" and itemized "Interest" and/or "Charges" at the top of the letter.

107.    The Second Class consists of all persons to whom FRONTLINE mailed a written communication in the form of *Exhibit A* between November 7, 2017 through November 28, 2018, using an address in the State of New York, which sought to collect a defaulted credit card debt on behalf of JH PORTFOLIO where the balance had been charged-off by the original creditor and the letter stated "As of the date of this letter you owe $[amount]" and itemized "Interest" and/or "Charges" at the top of the letter.

108.    The identities of all class members are readily ascertainable from the records of FRONTLINE, JH PORTFOLIO, LVNV, and RESURGENT.

109.    The Class claims include all claims the Class members may have for a violation of the FDCPA based on a letter from FRONTLINE substantially in the same form as ***Exhibits A and B***.

110.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)    **Numerosity:** The Plaintiffs are informed and believe, and on that basis allege, that the Classes defined above are so numerous that joinder of all members would be impractical.

(b)    **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Class and those questions predominate over any questions or issues involving only individual Class members. The principal issues are whether the Defendants' written communications to consumers, in the form attached as ***Exhibits A and B***, violate 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692g(a)(1).

(c)    **Typicality:** The Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs and all members of the Classes have claims arising out of the Defendants' common uniform course of conduct complained of herein.

(d)    **Adequacy:** The Plaintiffs will fairly and adequately protect the interests of the Class members insofar as Plaintiffs have no interests that are averse to absent Class members. The Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue the instant class

action lawsuit.

(e)    **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

111.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

112.    Based on discovery and further investigation (including, but not limited to, Defendants' disclosure of class size and net worth), Plaintiffs may, in addition to moving for class certification using modified definitions of the Classes, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4). Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions but who were mailed a letter using substantially the same form or template as was used to create *Exhibits A and B*.

## VIII. FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST ALL DEFENDANTS)

113.    Plaintiffs realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

114.    Defendants violated the FDCPA. Defendants' violations with respect to *Exhibits A and B* include, but are not limited to, the following:

(a)     Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

(b)     Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

(c)     Making false threats to take action that cannot legally be taken and/or that is not intended to be taken in violation of 15 U.S.C. §§ 1692e and 1692e(5);

(d)     Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and

(e)     Failing to provide the amount of the debt in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692g(a)(1).

## IX. PRAYER FOR RELIEF

115.    WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and in favor of the Class as follows:

(a)     An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure including, but not limited to, defining the Classes, the Class claims, appointing Plaintiffs as the class representatives, and the undersigned counsel to represent the Classes;

(b)     An award of statutory damages for Plaintiffs and the Classes pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(c)     An incentive award for Plaintiffs, to be determined by the Court, for Plaintiffs' services to the Classes;

(d)    Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(e)    For such other and further relief as may be just and proper.

## X. JURY DEMAND

Plaintiffs hereby demand that this case be tried before a Jury.

DATED:    Uniondale, New York
          November 7, 2018

                              *s/ Abraham Kleinman*
                              Abraham Kleinman (AK-6300)
                              KLEINMAN LLC
                              626 RXR Plaza
                              Uniondale, NY 11556-0626
                              Telephone: (516) 522-2621
                              Facsimile:  (888) 522-1692
                              E-Mail:  akleinman@kleinmanllc.com

                              *Attorney for Plaintiffs, Annmarie Avila and Yankee Gindoff*

-18-

# EXHIBIT "A"



Department
PO Box 1259
Oaks, PA 19456

TO MAKE AN ONLINE PAYMENT ARRANGEMENT VISIT WWW.PAYFRONTLINE.COM

 
ANNMARIE AVILA
ROCKVILLE CENTRE NY 11570-4244

Frontline Asset Strategies, LLC
2700 Snelling Ave N.
Ste 250
Roseville, MN 55113

Date: 12/13/2017

| | |
|---|---|
| Current Creditor to whom the debt is owed: | LVNV Funding LLC |
| Original Creditor: | Capital One, N.a. |
| Original Creditor#: | xxxxxxxxxxxx2852 |
| Charge-off Date: | 09/23/2016 |
| FAST #: | 4603 |
| Total Amount Due: | $830.38 |
| Last Pay Date: | 02/09/2016 |
| Total Due as of Charge-off: | $830.38 |
| Total Interest Accrued Since Charge-off: | $0.00 |
| Total non-interest Charges or Fee Accrued Since Charge-off: | $0.00 |
| Total Paid on Debt Since Charge-off: | $0.00 |

Dear ANNMARIE AVILA:

Debt Collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to:
- The use or threat of violence; the use of obscene or profane language; and repeated phone calls made with the intent to annoy, abuse, or harass.

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:

1) Supplemental security income, (SSI); 2) Social security; (3) Public assistance (welfare); (4) Spousal support, maintenance (alimony), or child support; (5)Unemployment benefits; (6) Disability benefits; (7) Workers' compensation benefits; (8) Public or private pensions; (9) Veterans' benefits; (10) Federal student loans, federal student grants, and federal work study funds; and (11) Ninety percent of your wages or salary earned in the last sixty days.

Your account has been turned over to Frontline Asset Strategies, LLC for collection. As of the date of this letter, you owe $830.38.

Please note that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency by the current account owner if you fail to fulfill the terms of your credit obligations. This notice in no way affects any rights you may have.

We strive to work with you in resolving this outstanding debt. Please call 877-258-1590 to make payment in full or to see what payment options may be available to you. You may also go to www.frontlineas.com/contact/ in order to chat with a live agent.

Thank you for your time and attention regarding the resolution of this debt. Nothing contained in this letter changes or alters your consumer rights. Calls to or from this company, along with communications via live chat, may be monitored or recorded.

Sincerely,
Troy Tratar
877-258-1590
Frontline Asset Strategies, LLC

**IMPORTANT NOTICE**
This communication is from a debt collector and is an attempt to collect a debt.
Any information obtained will be used for that purpose.

Please see the reverse side or next page for important consumer notices.
Frontline Asset Strategies, LLC • 2700 Snelling Ave N. • Ste 250 • Roseville, MN 55113
Toll Free: 877-258-1590 Fax: 6516212879
Hours of Operation: Monday-Friday 7AM-9PM CST • Saturday 8AM-12PM CST




120422-L01-8563

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request, in writing, of this office within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

City of New York, Department of Consumer Affairs License Number is 1301837.

# PRIVACY NOTICE

This Privacy Notice is being provided on behalf of each of the following related companies (collectively, the "Resurgent Companies"). It describes the general policy of the Resurgent Companies regarding the personal information of customers and former customers.

| | | |
|---|---|---|
| Resurgent Capital Services L.P. | LVNV Funding, LLC | Ashley Funding Services LLC |
| Sherman Acquisition L.L.C. | PYOD LLC | SFG REO, LLC |
| Resurgent Capital Services PR LLC | Anson Street LLC | Pinnacle Credit Services, LLC |
| CACV of Colorado, LLC | CACH, LLC | |

**Information We May Collect.** The Resurgent Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, such as your name, address, social security number, and assets; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, such as your income and payment history; (3) information that we receive from consumer reporting agencies, such as your creditworthiness and credit history, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.** At the Resurgent Companies, we restrict access to collected information about you to individuals who need to know such collected information in order to perform certain services in connection with your account. We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

**Sharing Collected Information with Affiliates**  From time to time, the Resurgent Companies may share collected information about customers and former customers with each other in connection with administering and collecting accounts to the extent permitted under the Fair Debt Collection Practices Act or applicable state law.

**Sharing Collected Information with Third Parties**  The Resurgent Companies do not share collected information about customers or former customers with third parties, except as permitted in connection with administering and collecting accounts under the Fair Debt Collection Practices Act and applicable state law.

120422-L01-8564

# EXHIBIT "B"



Qraise 2028 
PO Box 1259
Oaks, PA 19456

TO MAKE AN ONLINE PAYMENT ARRANGEMENT VISIT WWW.PAYFRONTLINE.COM



YANKEE GINDOFF

TALLMAN NY 10982-0740
004521

Frontline Asset Strategies, LLC
2700 Snelling Ave N.
Ste 250
Roseville, MN 55113

Date: 11/08/2017

| | |
|---|---|
| Current Creditor to whom the debt is owed: | JH Portfolio Debt Equities, LLC |
| Original Creditor: | HSBC Bank Nevada, N.a. |
| Account Description: | Platinum Mastercard |
| Original Creditor#: | xxxxxxxxxxxx0524 |
| Charge-off Date: | 08/31/2017 |
| FAST #: | ▉2596 |
| Total Amount Due: | $10,984.73 |
| Last Pay Date: | 01/13/2017 |
| Total Due as of Charge-off: | $10984.73 |
| Total Interest Accrued Since Charge-off: | $0.00 |
| Total non-interest Charges or | |
| Fee Accrued Since Charge-off: | $0.00 |
| Total Paid on Debt Since Charge-off: | $0.00 |

Dear YANKEE GINDOFF:

Debt Collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to:
-   The use or threat of violence; the use of obscene or profane language; and repeated phone calls made with the intent to annoy, abuse, or harass.

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:

1) Supplemental security income, (SSI); 2) Social security; (3) Public assistance (welfare); (4) Spousal support, maintenance (alimony), or child support; (5)Unemployment benefits; (6) Disability benefits; (7) Workers' compensation benefits; (8) Public or private pensions; (9) Veterans' benefits; (10) Federal student loans, federal student grants, and federal work study funds; and (11) Ninety percent of your wages or salary earned in the last sixty days.

Your current creditor has placed the above-mentioned account in our office to resolve. Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement. Please note that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency by the current account owner if you fail to fulfill the terms of your credit obligations. This notice in no way affects any rights you may have.

As of the date of this letter, you owe $10,984.73. Go to our secure website, www.payfrontline.com, make payment in full or to see what payment options may be available to you.

If you cannot make payment in full, please call our office at 877-258-1590 to discuss alternate payment arrangements. Remember, we here at Frontline Asset Strategies are here to assist you in resolving this outstanding debt and moving forward. We strive to work with you, not against you.

**IMPORTANT NOTICE**
This communication is from a debt collector and is an attempt to collect a debt.
Any information obtained will be used for that purpose.

Please see the reverse side or next page for important consumer notices.
Frontline Asset Strategies, LLC • 2700 Snelling Ave N. • Ste 250 • Roseville, MN 55113
Toll Free: 877-258-1590 Fax: 6516212879
Hours of Operation: Monday-Friday 7AM-9PM CST • Saturday 8AM-12PM CST

MEMBER

ACA
INTERNATIONAL
The Association of Credit
and Collection Professionals


120422-L16-751

Thank you ... your consumer rights.  Calls to or from this company, along with communications ... live chat, may be monitored or recorded.

Sincerely,
Troy Tratar
877-258-1590
Frontline Asset Strategies, LLC

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request, in writing, of this office within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

City of New York, Department of Consumer Affairs License Number is 1301837.

## WHAT INFORMATION WE COLLECT AND HOW WE USE THAT INFORMATION

You may use the Site without disclosing to us any personally identifiable information. We do not collect any personally identifiable information from you (e.g., name, address, telephone number, email address) when you use the Site. If you contact us, we may keep a record of your contact information and correspondence, and we reserve the right to use your contact information, and any other information that you provide to us in your message, to respond thereto. If you wish to change any information submitted to us, please do so by contacting us at the address provided above.

We may use cookies to collect non-personally identifiable information in connection with the Site. Our web pages may incorporate "pixel tags," "web beacons," or similar tracking technologies (collectively, "pixel tags") that allow us or our agents to track the actions of users of the Site. Pixel tags are used to collect non-personally identifiable information, such as the name of your Internet service provider, the IP address of the computer you are using, the type of browser software and operating system that you use, the date and time you access the Site, the website address, if any, from which you linked directly to the Site, the website address, if any, to which you travel from the Site and other similar traffic-related information. We may also aggregate your information with similar data collected from other users to help us improve the Site and the services that we provide through the Site.

In the event of a sale or transfer of assets or of any portion of our business, we reserve the right to transfer any and all information that we collect from users, or that we otherwise collect in connection with the Site, to unaffiliated third parties or third parties.

Monitoring, Enforcement and Legal Requests

JH Capital Group has no obligation to monitor the Site or the use of the Site or to retain the content of any user session. However, JH Capital Group reserves the right, at all times, to monitor, review, retain and/or disclose any information, as necessary, to satisfy any applicable law, regulation, legal process or governmental request or to cooperate with law enforcement and other authorities in investigating a claim of illegal activity. We may use IP addresses to identify a user when we feel it is necessary to protect the Site, our service, clients, potential clients or others.

Other Sites

Except as otherwise expressly discussed in this Privacy Policy, this policy only addresses our use and disclosure of information we collect from you. Any email messages and associated information that you send to addresses published on the Site are not governed by this policy. To the extent that you disclose personal or non-personal information to other sites, you are subject to the privacy customs and policies of those sites. We encourage you to ask questions before you disclose any personal information.

120422-L16-752